Lipscomb, J.
To dispose of the first assignment it will be necessary to refer to the act of the Congress of Texas incorporating the city of Galveston. (Acts 1840. p. 266.) The first section is as follows : “ That all the free white inhabitants of the city of Galveston shall continue to be a body politic and corporate, by the name of the Mayor, Aldermen, and Inhabitants of the City of Galveston; and by that name they and their successors shall have, exorcise, and enjoy all the rights, immunities, powers, privileges, and franchises, and shall be subject to all the duties and obligations now appertaining and incumbent on said city as a corporation, or incumbent upon the inhabitants or officers thereof; and may ordain and establish such acts, laws, ordinances, and regulations, not inconsistent with the Constitution or laws of this Republic as shall be needful to the good order of said body politic; and under the same shall be known in law and bo capable of suing1 and being sued, and of defending in all courts and in all actions and matters whatever,” &c. It is not material to cite the remaining part of the charter. The name and style of the corporation .is here fixed and .designated, b}r which it shall be known', and by which it is to discharge and execute all the obligations and powers conferred on it, and by which it is to be known in law, and to sue and to defend. It would therefore seem to be too plain to admit of a doubt that a suit brought for the violation of its ordinances could only be brought in its own name and not in any other, either of a real or fictitious person.
On the second ground taken it is not necessary to say much. If the action had been in the name of the corporation to which different liabilities had accrued from the same person, under our system of practice there is no sound objection to tlieir being both sued for in one and the same action. It is a more convenient and loss expensive mode of proceeding, and would have admitted as full and ample defense as could have been made had different suits been brought for each cause of action.
The third assignment, that the charter, if it authorized such tax to he imposed and collected, was so far repugnant to the Constitution of the Republic of Texas, is not believed to be well taken. We can find nothing, either in express terms or by necessary implication, in the Constitution of the Republic that would prohibit the Congress from granting such power.
To decide on the sufficiency of the fourth assignment, it is necessary to refer to the act of Congress of Texas of 1844, amending the charter of the city of Galveston. The 17th section of this act provides “ that the mayor and aldermen of the city of Galveston shall have power, for the purpose of establishing and maintaining a hospital, to levy and collect from the masters and owners or consignees of any vessel, steamboat, or other craft arriving in the port of Galveston from any foreign port the sum of one dollar for each passenger.”
It will he borne in mind that at the date of the enactment of the amendment to the charter of the city of Galveston the Congress of Texas was legislating for an independent Republic; that at that time the ports of the United States of America were foreign, and that no question could then have arisen as to authority to pass a law for the collection of taxes on passengers arriving from foreign ports. The act, however, in its terms expressly limits the collection *216 of such taxes to passengers arriving at foreign ports. New Orleans, in the State of Louisiana, was then a foreign port, and came within the letter and spirit of the act. Since that time a great change has taken place. New Orleans is not now, as to her relations with Texas, a foreign port.
The Republic of Texas is no more; and all such laws as are repugnant to the Constitution of the United States, enacted by the Republic, would have to yield to the influence of that instrument, but such as are not repugnant thereto Texas, as an independent State of the confederacy framed by that Constitution, may claim to be still valid and in full force and effect until repealed or modified by her State Legislature. The question would then arise, Is the authority conferred by tile act amending the charter of tile city of Galveston in 1844 repugnant to the Constitution of the United States? To this question, until very recently, I would have thought it could be answered on the authority of the Constitution itself and on solemn adjudications in the negative. I should have said that it would be perfectly competent for the Legislature o~ Texas to have passed precisely such an act as the one under consideration without encroaching on the provisions and powers delegated to the Federal Government by the Constitution of the United States; and that consequently this act of the Congress of the Republic was left in full force, unimpaired by the annexation of the State of Texas to the United States. But the decisions of the Supreme Court of the United States at the December Term, 1848, in the two cases of Smith v. Turner, and Norris v. The City of Boston, would seem to go the whole length of taking from the States the right to pass such laws, and to declare that when so passed they are unconstitutional and void. That court being the tribunal of the last resort on such questions, its decision for the time will perhaps command submission., It is not, however, likely, when so decided by a divided court, with a majorit of only one and the great weight of judi~ cial learning against it, that it will receive the general approbation of either the bar or the beneh~. By many it will be regarded as a most thiugerous audi au alarming encroachment upon the constitutional rights of the States.
We are, however, satisfied that the demurrer to the parties was well taken and ought to have been sustained ; and for this reason we would reverse the case hut from the fact that it is an appeal front a justice of the peace, and we have held in the case of Titus v. Latimer at this term that an appeal will not lie from a justice of the peace to the District Court tinder our Constitution, All that we can do is to dismiss the case from this court.
Hemphill, Ch. J., and Wheeler, J. The question involved in this cause was elaborately investigated in the causes of Smith v. Turner, and Norris v. The City of Boston, decided in the Supreme Court of the United States, and the learned judges of that court were divided in their opinions, the causes being decided by a majority of only one. The question in that court was of the first impression; and so great Was the diversity of opinion that we cannot until further adjudications regard the decisions as conclusive authority.
Reversed and dismissed.